UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JAMES JOHNSON,<br><br>                    Petitioner,<br><br>     v.<br><br>RALPH M. DIAZ,<br><br>                    Respondent. | No. 2:12-cv-2565-TLN-EFB P<br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner without counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. On March 26, 2013, respondent filed a motion to dismiss on the grounds that the petition is untimely. ECF No. 11. For the reasons that follow, the undersigned recommends that the motion be granted in part and denied in part.

**I.     The Petition**

On January 28, 1983, petitioner pleaded guilty to various charges, including attempted robbery and kidnapping with the intent to commit robbery. ECF No. 1 at 1. He received a sentence of seven years to life in prison. *Id.* The judgment was affirmed on direct appeal, and petitioner did not seek review by the California Supreme Court. *Id.* at 2. Petitioner avers that he was not mentally stable prior to 1995, but that, since then, he has "been doing everything possible to present the fact and circumstances of this case" to a court. *Id.* at 72. According to respondent,

petitioner has filed a number of state habeas petitions, beginning in December 1999.[1] ECF No. 11 at 3.

## II.     The Limitations Period

Under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), a one-year limitations period for seeking federal habeas relief begins to run from the latest of: (1) the date the judgment became final on direct review (or April 25, 1996, if the judgment became final prior to AEDPA's enactment), (2) the date on which a state-created impediment to filing is removed, (3) the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review, or (4) the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(A)-(D); *Malcom v. Payne*, 281 F.3d 951, 955 (9th Cir. 2002).

### A.     Statutory Tolling

No statute tolls the limitations period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed . . . ." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).  However, if a petitioner properly files a state post-conviction application prior to the expiration of the limitations period, the period is tolled, and remains tolled for the entire time that application is "pending."  28 U.S.C. § 2244(d)(2).  "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  In California, a properly filed post-conviction application is "pending" during the intervals between a lower court decision and the filing of a new petition in a higher court that elaborates on the claims raised in the lower-court petition (rather than raises different claims).  *Stancle v. Clay,* 692 F.3d 948, 953 (9th Cir. 2012); *Carey v. Saffold*, 536 U.S. 214, 223 (2002).  A federal habeas application does not provide a basis for statutory tolling.  *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).  Nor does a state petition

---

[1] Respondent states that it has obtained copies of most of petitioner's state habeas filings, that most of them relate to parole suitability and are irrelevant to this action, and that all were filed after the expiration of the limitations period and thus do not provide a basis for tolling that period (*see* discussion below).  ECF No. 11 at 3 n.3.  Respondent will lodge the petitions upon the court's request.  *Id.*

filed after the federal limitations period has expired. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

### B. Equitable Tolling and the Equitable Exception for Innocence

The limitations period may also be equitably tolled where a habeas petitioner establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2554, 2562 (2010). Petitioner has the burden of showing facts entitling him to equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). The threshold necessary to trigger equitable tolling is very high, "lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). Equitable tolling may be applied only where a petitioner shows that some external force caused the untimeliness. *Id*.

In addition, the statute of limitations is subject to an actual innocence exception.[2] A petitioner may have his untimely case heard on the merits if he can persuade the district court that it is more likely than not that no reasonable juror would have convicted him. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928, 1933 (2013); *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 133 S. Ct. at 1935. For example, the "court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability" of his evidence of innocence. *Id.*

### III. Analysis

The petition raises a number of claims:

(1) That petitioner's trial counsel rendered ineffective assistance by advising petitioner, who was not mentally competent, to plead guilty (ECF No. 1 at 17) and to accept a sentence of seven years to life (*id.* at 27);

---

[2] This exception is also known as the "miscarriage of justice" exception and the "*Schlup* gateway*,*" after *Schlup v. Delo*, 513 U.S. 298 (1995), in which the U.S. Supreme Court held that a habeas petitioner whose claims were procedurally barred could nevertheless obtain a determination on the merits of his petition if he made the requisite showing of actual innocence.

1     (2) That the trial court erred by failing to order a hearing on petitioner's competency prior
2         to accepting his guilty plea (*id.* at 21);
3     (3) That petitioner was not mentally competent to enter into the plea agreement (*id.* at 25);
4     (4) That the state has violated the plea agreement because:
5         a) petitioner's trial counsel told him that the district attorney and trial court had
6             agreed that petitioner would serve no more than 11 years in prison and then be
7             released if he behaved while confined (*id*. at 24); and
8         b) the state is currently refusing to refer petitioner to the Board of Parole Hearings
9             for a parole suitability determination (*id.* at 25) and has since July 2003 (ECF
10             No. 18 at 3).

11     As respondent argues, claims (1), (2), (3), and (4)(a) are untimely.  These claims concern events that occurred at the time of petitioner's plea in 1983.  Thus, they should have been raised in a federal habeas petition filed within a year of AEDPA's effective date (i.e., by April 24, 1997), *Malcom*, 281 F.3d at 955, unless petitioner can establish a state-created impediment to filing, a later and retroactive rule of law, some reason why the factual predicate of these claims could not be discovered until later, a basis for tolling, or actual innocence.  28 U.S.C. § 2244(d)(1)(A)-(D).  Petitioner argues that he was unable to understand his legal proceedings due to his mental health issues and that "there is no time constraints [sic] on attacking a sentence where there is a claim of actual innocence."  ECF No. 18 at 6.  Petitioner also mentions many times how his limited understanding of the law obstructed his path toward habeas relief.  ECF No. 1 at 68-69.

    The court construes petitioner's claim that his mental health prevented him from understanding legal proceedings to urge either that: (1) he could not discover the factual predicate of his federal habeas claims due to his mental health, justifying a later limitations start date, or (2) the limitations period should be tolled on equitable grounds in consideration of his diminished mental capacity.  Neither argument is persuasive, however, in light of petitioner's admission that he became "fairly lucid and stable" in 1995 and then began "doing everything possible" to present his habeas case.  ECF No. 1 at 72.  Even assuming that petitioner's mental state precluded him

4

1  from bringing his case prior to 1995 (a fact the court need not decide), the one-year federal
2  limitations period did not begin until April 25, 1996.  Petitioner has presented no facts indicating
3  that his mental health somehow prevented him from pursuing his habeas remedies after 1995.
4  Instead, petitioner avers that his limited knowledge of the law prevented him from pursuing a
5  habeas petition between 1995 and 1998, the period in which the federal limitations period expired
6  absent tolling.  *Id.* at 69-70.  Unfortunately for petitioner, the U.S. Court of Appeals for the Ninth
7  Circuit has held that "a pro se petitioner's lack of legal sophistication is not, by itself, an
8  extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150,
9  1154 (9th Cir. 2006).

10  As to petitioner's claim that his case should be heard on the merits under the actual
11  innocence exception to the limitations period, petitioner has failed to meet the heavy burden of
12  persuading the court that it is more likely than not that no reasonable juror would have convicted
13  him.  *McQuiggin*, 133 S. Ct. at 1928, 1933.  Petitioner does not claim that he is factually innocent
14  of the charged crimes, but rather that the incompetence of his trial attorneys deprived him either a
15  viable plea of not guilty by reason of insanity or a viable defense of diminished capacity.  The
16  court need not address whether petitioner's claim that he committed the crime but should have
17  been found not guilty by reason of insanity constitutes an "actual innocence" claim.  *See Britz v.*
18  *Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) (concluding that a petitioner's claim that he was
19  "legally innocent" although not "factually innocent" could qualify for the *Schlup* gateway).  Here,
20  assuming that legal innocence alone is enough; petitioner does not meet his burden of showing
21  such an actual innocence basis for proceeding on the otherwise time-barred claim.  He provides
22  very little facts regarding his crimes, his mental illness, or his "insanity."  He avers that, at his
23  trial, his "mental-emotional condition" was "extremely diminished" such that his attorney stood at
24  his side "nudging me thereby moving me to parrot 'Yes' or 'No' to the questions being asked of
25  me."  ECF No. 1 at 68.  According to petitioner, he has a "history of being placed in mental
26  hospitals," and "at the time of my arrest it was proven scientifically via toxicology reports that I
27  was under the influence of mind-altering drugs, and alcohol."  *Id.* at 72.  Several psychiatrists
28  were appointed by the trial court to evaluate him, leading the court to accept his initial plea of not

guilty by reason of insanity. *Id.* at 21, 24. One of those reports, by a Dr. Theodore Odland, "indicat[ed] that Petitioner was possibly insane." *Id.* at 24. Petitioner has not provided the reports of Dr. Odland or any other psychiatrist or the toxicology reports, however, despite having had access to his entire trial record since 2003. *Id.* at 71.

Under California law, a defendant with mental health issues may introduce evidence of those issues in two ways. First, the defendant may use such evidence during the guilt phase of her trial, where sanity is conclusively presumed, to rebut the prosecution's showing of the mental state required for the crime. *People v. Mills*, 55 Cal.4th 663, 672 (2012). In addition, in 1983, a defendant could also introduce evidence of voluntary intoxication on the issue of whether the defendant formed the specific intent necessary to commit the charged crimes (if those crimes required proof of specific intent). *People v. Mendoza*, 18 Cal.4th 1114, 1124 (1998). Second, if the defendant is nevertheless found guilty but has pleaded not guilty by reason of insanity, the defendant proceeds to the next phase of trial, in which the defendant must show by a preponderance of the evidence that the defendant was legally insane when the defendant committed the crime. *Id.* To establish insanity, the defendant must show that the defendant was incapable of knowing or understanding the nature and quality of the defendant's act and of distinguishing right from wrong at the time of the commission of the offense. *People v. Wilder*, 33 Cal.App.4th 90, 98 (4th App. Dist. 1995).

Petitioner has not offered the court sufficient evidence from which it can conclude that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt due to diminished mental capacity, voluntary intoxication, or insanity. Beyond petitioner's vague assertions, there is nothing in the record to show that his mental state was so diminished (due to illness or intoxication) such that it is probable that no reasonable juror would have found him guilty of the charged crimes. (On a more basic level, petitioner has not argued to the court that the crimes of which he was charged required a specific intent rebuttable by a showing of mental illness or intoxication.). Nor has petitioner presented the court with any evidence substantiating his claim that he was insane at the time he committed the crimes. As petitioner has not met his burden of persuading the court he is actually innocent or provided any other viable

basis for tolling the limitations period, the undersigned recommends that the court grant respondent's motion to dismiss claims (1), (2), (3), and (4)(a) as untimely.

As to petitioner's claim that the state has failed to provide him with parole suitability hearings since 2003 (identified as claim (4)(b), above), respondent argues that petitioner has not identified an event occurring within 12 months of the filing of this petition that would trigger a later limitations start date or otherwise support his argument that inaction by the parole board entitles him to a later trigger date. ECF No. 19 at 3. Petitioner argues that the board's refusal to provide him with a suitability hearing is an "ongoing matter" such that the limitations period has not expired. ECF No. 18 at 8.

The court presumes that petitioner wishes to invoke a "continuing violation" doctrine in support of his argument that claim (4)(b) is not time-barred. This doctrine has traditionally been applied in discrimination actions and "permits a plaintiff to sue for . . . discriminatory acts that occurred during the limitations period, even if the policy or other event giving rise to the discrimination occurred outside the limitations period." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 (9th Cir. 2009). Claims based on discrete acts of discrimination are only timely where such acts occurred within the limitations period, but claims based on a continuing set of acts that together create a hostile environment are timely if at least one act occurred during the limitations period. *Cherosky v. Henderson*, 330 F.3d 1243, 2146 (9th Cir. 2003) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 122, 127 (2002)). A plaintiff can establish a continuing violation by showing a systematic policy or practice that operated, in part, within the limitations period. *Mansourian v. Regents of the Univ. of Cal.*, 594 F.3d 1095, 1110 (9th Cir. 2010).

It has not been settled in the federal courts whether this doctrine is applicable in habeas corpus proceedings. *Compare Broom v. Strickland*, 579 F.3d 553, 555-56 (6th Cir. 2009) (applying the continuing violation doctrine in a habeas action, but rejecting petitioner's claim because he challenged a discrete act) *with McAleese v. Brennan*, 483 F.3d 206. 218 (3d Cir. 2007) (noting petitioner's failure to identify any Third Circuit case applying the continuing violations doctrine to toll the limitations period in a habeas action); *Gantt v. Anderson*, No. 1:09CV40, 2010

U.S. Dist. LEXIS 104126, at *12-13 (M.D.N.C. Sept. 29, 2010) (noting that it is unclear whether the continuing violations doctrine applies in habeas actions); *and Wolfel v. Timmerman-Cooper*, No. 2:07-cv-1079, 2009 U.S. Dist. LEXIS 9088, at *2-3 (S.D. Ohio Feb. 6, 2009) (refusing to apply the continuing violations doctrine in a habeas action challenging repeated parole denials). Even assuming that the doctrine applies, several courts have rejected continuing violation arguments in habeas cases challenging parole denials, because those denials constituted discrete acts. *E.g.*, *McAleese*, 483 F.3d at 219 (finding that three parole denials over a period of six years were isolated and sporadic acts, rather than a persistent or ongoing pattern); *Huff v. Ryan*, No. CV 11-0773-TUC-FRZ (BPV), 2012 U.S. Dist. LEXIS 183814, *11-12 (D. Ariz. Sept. 11, 2012) ("Successive denials of parole which do not involve separate factual predicates do not warrant separate statute of limitations calculations."); *Wolfe v. DiGuglielmo*, No. 06-5261, 2008 U.S. Dist. LEXIS 117639, at *14 n.8 (E.D. Pa. Jan. 25, 2008) (same).

This case is different from *McAleese*, *Huff*, and *Wolfe*, however, in that petitioner does not challenge a discrete decision to deny parole. Rather, petitioner challenges the parole board's alleged continuous refusal since 2004 to provide parole hearings. This case more closely resembles *Gilman v. Brown*, No. CIV. S-05-830 LKK/GGH, 2012 U.S. Dist. LEXIS 75728, at *15-17 (E.D. Cal. May 30, 2012). There, a judge of this district applied the continuing violations doctrine in determining that a civil rights class action brought by inmates was not time-barred. *Id.* Because the inmates alleged that defendants operated under an ongoing policy that deprived them of due process during the parole eligibility determination process, the action could proceed even if some violations had occurred outside the limitations period. *Id.*

As in *Gilman*, petitioner alleges an ongoing practice that continues today, rather than discrete instances of alleged misconduct. While petitioner was put on notice when he did not receive a parole hearing in 2004 that his rights were potentially being violated, barring his suit as untimely would ignore the state's continuous subsequent refusal to provide hearings and effectively allow the state to continue to deny parole hearings. Respondent has not advanced a persuasive argument justifying such an outcome. Accordingly, the motion to dismiss should be denied with respect to claim (4)(b).

### IV. Petitioner's Motion for Summary Judgment

On October 7, 2013, petitioner filed a motion for summary judgment. ECF No. 21. Instead of opposing that motion's substance, respondent asked the court to "dismiss" the motion without prejudice to its renewal after the court had resolved respondent's motion to dismiss. ECF No. 22. Respondent shall file a substantive opposition within 21 days of any order adopting these findings and recommendations.

### V. Conclusion and Recommendation

For the reasons stated above, it is hereby RECOMMENDED that respondent's March 26, 2013 motion (ECF No. 11) be denied as to petitioner's claim that the state is currently refusing to refer him to the Board of Parole Hearings for a parole suitability determination, and otherwise granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 10, 2014.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE